# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

LISA T. LEBLANC, *et al.*,  )
                                    )
       Plaintiffs,         )
                                    )
v.                                 )      Case No. CIV-16-1026-D
                                    )
TEXAS BRINE CO., LLC, *et al.*,  )
                                    )
       Defendants.      )

## **O R D E R**

Before the Court is Texas Brine Company, LLC's ("Texas Brine") Motion to Quash Subpoena Duces Tecum to Frontier International Group, LLC ("Frontier") [Doc. No. 1]. Occidental Chemical Corporation ("Oxy") has responded [Doc. No. 19], and Texas Brine has replied [Doc. No. 28]. Following unsuccessful attempts to resolve the discovery dispute,[1] a hearing was held on Tuesday, February 7, 2017, to address Texas Brine's Motion. Having considered the Motion, papers, related exhibits, and oral arguments, Texas Brine's Motion is GRANTED IN PART and DENIED IN PART, as set forth herein.[2]

### **Factual and Procedural Background**

This action seeks to enforce a subpoena duces tecum issued in a civil action pending in the United States District Court for the Eastern District of Louisiana, *Leblanc. v. Texas*

---

[1] The parties met and conferred on December 15, 2016, and again in chambers before the February 7, 2017 hearing. *See* Order [Doc. No. 42] at 1; Notice [Doc. No. 43] at 1.

[2] Rule 45 authorizes this Court – the court in the district where compliance is required – to enforce, quash, or modify the subpoena duces tecum. See Fed. R. Civ. P. 45(d)(3).

*Brine Co., LLC*, Case No. 2:12-CV-2059-JCZ-MBN. Texas Brine and Oxy are co-defendants in the Louisiana action, which concerns a sinkhole located on land owned by Oxy and mined by Texas Brine. Soon after the sinkhole's first appearance on August 3, 2012, Texas Brine, through its former attorney, retained Frontier[3] to provide advice on emergency management, government and community relations, litigation settlement strategy, and media consulting. Additionally, Texas Brine retained Todd Beyer ("Beyer") to assist Texas Brine's counsel in preparing information for dissemination to the press, elected officials, and the community regarding the company's remediation efforts. In October, 2013, Texas Brine retained Brooks Altshuler ("Altshuler"), attorney and Frontier's owner and principal, in his individual capacity to further advise the company on response and remediation efforts and to negotiate with State and local government agencies. Finally, in September, 2014, Texas Brine's current counsel retained Frontier as a consulting expert for trial preparation.

On December 18, 2014, Texas Brine filed a third-party demand and cross-claim against Oxy seeking indemnity, or alternatively, contribution for approximately $80 million spent in responding to the sinkhole. Texas Brine amended its demand in September, 2015, stating the amount incurred had risen to $100 million. Oxy then issued a subpoena duces tecum to third-party Frontier requesting production of the following eight

---

[3] Frontier is an "Oklahoma-based management consulting and strategic advisory firm." Mot. [Doc. No. 1] at 5.

classes of documents related to services provided by Frontier, Beyer, and Altshuler to Texas Brine:

1. Any and all documents concerning the Napoleonville Salt Dome, in Assumption Parish, Louisiana;

2. Any and all documents concerning the sinkhole occurrence on the Napoleonville Salt Dome in Assumption Parish on or about August 2012;

3. Any and all documents concerning the events leading up to the sinkhole occurrence that occurred on the Napoleonville Salt Dome in Assumption Parish in or about 2012;

4. Any and all communications with Texas Brine Company, LLC or any employees, agents, or counsel thereof concerning the sinkhole occurrence, the response to the sinkhole occurrence, the cause(s) of the sinkhole, and any aspect of the ongoing litigation in Louisiana and Texas pertaining to the sinkhole occurrence;

5. Any and all communications with Sonny Cranch or any employee of Cranch Hardy & Associates concerning the sinkhole occurrence, the response to the sinkhole occurrence, the cause(s) of the sinkhole, and any aspect of the ongoing litigation in Louisiana and Texas pertaining to the sinkhole occurrence;

6. Any and all communications with any members of the media or public concerning the sinkhole occurrence, the response to the sinkhole occurrence, the cause(s) of the sinkhole, and any aspect of the ongoing litigation in Louisiana and Texas pertaining to the sinkhole occurrence;

7. Any and all public statements generated by or on behalf of Texas Brine Company, LLC and/or any other entity in connection with the sinkhole occurrence, the cause(s) of the sinkhole, and any aspect of the ongoing litigation in Louisiana and Texas pertaining to the sinkhole occurrence, including drafts, revisions, distribution lists, and correspondence related thereto; and

8. Any interview transcripts, video footage, newspaper clippings, online articles, or other published, printed or distributed media in your

> possession concerning the sinkhole occurrence, the response to the sinkhole occurrence, the cause(s) of the sinkhole, and any aspect of the ongoing litigation in Louisiana and Texas pertaining to the sinkhole occurrence.

Subpoena [Doc. No. 1-3] at 5-6.

Texas Brine filed its Motion on September 2, 2016, claiming attorney-client privilege and work product protection. In its Response, Oxy argues that neither privilege protects Frontier from production of documents related to the non-legal services that Frontier provided to and billed Texas Brine for, and that Frontier must provide Oxy a privilege log listing any documents withheld under either privilege.[4] In its Reply, Texas Brine contends that attorney-client privilege extends beyond legal advice, and in this case, protects all communications between it and Frontier, Beyer, and Altshuler.

## Standard

A. <u>Standing</u>

The general rule regarding standing is that only the party to whom the subpoena is directed has standing to object to its issuance. *See*, *e.g.*, *Shirazi v. Childtime Learning Ctr., Inc.*, 2008 WL 4792694, at *1 (W.D. Okla. Oct. 31, 2008) (unpublished opinion); *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590 (D. Kan. 2003); *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979). However, an exception to that rule applies where the challenging party asserts a privilege with respect to the materials subpoenaed.

---

[4] Oxy further argues that Texas Brine has waived any attorney-client privilege and work product protection by bringing a cross-claim for response cost reimbursement. However, when questioned at the February 7, 2017 hearing, Oxy did not advance this argument. Accordingly, the Court will not address it here.

4

*See Shirazi*, 2008 WL 4792694, at *1; *Brown*, 595 F.2d at 967; *see also* 9A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (3d ed. 2008). To satisfy the standing requirement on this basis, the challenging party must specifically identify the privilege upon which it relies. *See Hitachi Med. Sys. America, Inc. v. Branch*, 2010 WL 3222424, at *2 (N.D. Ohio Aug. 13, 2010) (unpublished opinion); *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 2009 WL 1562851, at *3 (D. Neb. June 1, 2009) (unpublished opinion); *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997).

B. Attorney-Client Privilege

The attorney-client privilege protects "confidential disclosures [made by the client] to an attorney . . . in order to obtain legal assistance." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "In order to balance this protection of confidentiality with the competing value of public disclosure, however, courts apply the privilege only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). The party claiming the privilege has the burden to assert the privilege specifically. *Id.*; *see also United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982). Blanket assertions of the privilege are ineffective because they "disable the court and the adversary party from testing the merits of the claim of privilege." *El Paso Co.*, 682 F.2d at 541.

5

C. <u>Work-Product Doctrine</u>

Although broader than attorney-client privilege, the work product doctrine "only applies to attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006) (citing Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 510-511 (1947)); *see also In re Grand Jury Matter*, 147 F.R.D. 82, 86 (E.D. Penn. Dec. 31, 1992); *United States v. Nobles*, 422 U.S. 225, 238 (1975) ("At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."). Fed. R. Civ. P. 26(b)(3)(A) incorporates the work product doctrine by stating:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4),[5] those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1);[6] and
> >
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

---

[5] Rule 26(b)(4) deals with expert witnesses.

[6] "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action. The amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

*Id.* "The party asserting a work product privilege as a bar to discovery must prove the doctrine is applicable . . . . A mere allegation that the work product doctrine applies is insufficient." *Grace United Methodist Church*, 451 F.3d at 668-69 (quoting *Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995)).

## Discussion

A. Standing

Although Oxy does not challenge Texas Brine's right to object to the subpoena duces tecum served on Frontier, decisions applying Rule 45(d)(3) require a court to consider the movant's standing even if it is not disputed. *See*, *e.g.*, *Hood v. Fiberweb, Inc.*, 2010 WL 4102219, at *1 (M.D. Tenn. Oct. 18, 2010) (unpublished opinion) ("Although the defendant has not raised the issue, as a general rule, a party does not have standing to move to quash a subpoena issued to a third party, absent a claim of privilege."); *Herff Jones, Inc. v. Okla. Graduate Servs., Inc.*, 2007 WL 2344705, at *3 n.4 (W.D. Okla. Aug. 15, 2007) (unpublished opinion); *Arias-Zeballos v. Tan*, 2007 WL 210112, at *1 (S.D.N.Y. Jan. 25, 2007) (unpublished opinion); *Transcor*, 212 F.R.D. at 590. The Court finds that, as a challenging party asserting privilege with respect to the materials subpoenaed, Texas Brine has standing and is a proper party to this action.

B. Attorney-Client Privilege

The Federal Rules of Evidence provide that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. In Louisiana, the attorney-client privilege is governed by Article 506

of the Louisiana Code of Evidence, which provides protection for "confidential communication[s] . . . made for the purpose of facilitating the rendition of professional services to the client," and encompasses communications made to "representatives of the lawyer." LA. CODE EVID. ANN. art. 506(B). Louisiana defines a "representative of the lawyer" as "a person engaged by the lawyer to assist the lawyer in the lawyer's rendition of professional legal services." LA. CODE EVID. ANN. art. 506(A)(4). Relying on this definition, Texas Brine purports Louisiana law extends the attorney-client privilege to a public relations firm and its agents.[7] The parties cite no Louisiana cases, and the Court has located none, which address this specific issue. Absent controlling law from the forum, the Court looks to other sources to analyze the extent of the privilege.

John Henry Wigmore's classic formulation of the attorney-client privilege provides:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

8 J. Wigmore, *Evidence in Trials at Common Law* § 2292, at 554 (J. McNaughton rev. ed. 1961) (emphasis omitted); *see also United States v. Brown*, 478 F.2d 1038, 1040 (7th Cir. 1973).

---

[7] Specifically, Texas Brine purports that because "Altshuler was retained as Texas Brine's counsel, and Frontier was retained as a representative of Texas Brine, as well as [Texas Brine's former and current counsel], . . . Louisiana's attorney-client privilege extends to any communications among them." Mot. [Doc. No. 1] at 10.

8

Despite Texas Brine's blanket claim of privilege,[8] the Court finds that Texas Brine has failed to show that the services it sought from Frontier, Beyer, and Altshuler were solely for the purposes of obtaining legal advice.[9] Conversely, the Court finds much of the work done and advice given by Frontier, Beyer, and Altshuler to Texas Brine and its counsel appears to fall outside the realm of legal advice, and therefore, is not protected by the attorney-client privilege. See *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 160 (E.D.N.Y. 1994) (stating that the attorney-client privilege "attaches only to legal, as opposed to business, services" and protects communications "made to the attorney acting in her capacity as counsel. If the communication[s] are made to the attorney in her capacity as a business adviser, for example, [they] ought not be privileged.") (citations and quotations omitted); *see also In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037-38 (2d Cir. 1984); *United States v. Kovel*, 296 F.2d 918, 922 (2nd Cir. 1961) (explaining that, to qualify for the privilege, the confidential communication between client and attorney must be made for the purpose of obtaining legal, not business, advice).

---

[8] The Court notes that Texas Brine has failed to comply with Fed. R. Civ. P. 45(e)(2)(A) requiring a person moving to quash a subpoena under the claim of privilege to "(i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." A review of Texas Brine's Motion reveals that its objections are conclusory and do not provide detailed information about the requested documents that would allow the Court to more fully assess the claim.

[9] For example, Frontier provided business advice to Texas Brine regarding "emergency management, state and local government relations, community relations, . . . and media consulting." Mot [Doc. No. 1] at 5. Further, through Beyer and Altshuler, Frontier routinely conferred with Texas Brine and its counsel "to discuss issues related to the [s]inkhole response and how Texas Brine's interactions with the media may affect . . . its position with the State and local governments." *Id*. at 6.

Therefore, the Court denies Texas Brine's Motion as to attorney-client privilege, absent a specific showing of the legal nature of each withheld communication.

    C. <u>Work Product Doctrine</u>

As with the attorney-client privilege, the work product doctrine does not protect written materials to and from a public relations firm or its agents regarding business, as opposed to legal, advice. *See Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, New York*, 171 F. Supp. 3d 136, 142 (S.D.N.Y. 2016) ("public relations advice, even if it bears on anticipated litigation, [generally] falls outside the ambit of protection of the so-called 'work-product' doctrine embodied in Rule 26(b)(3)") (citations and quotations omitted); *see also United States v. United Shoe Mach. Corp.*, 89 F.Supp. 357, 359 (D. Mass. 1950) ("communication[s] [that] neither invite nor express any legal opinion . . . , but [merely] involve[] the . . . soliciting or giving of business advice, [are] not privileged"). Additionally, an attorney's non-litigation activity confers no work product protection. *See F. H. Krear & Co. v. 19 Named Trs.*, 90 F.R.D. 102, 103 (S.D.N.Y. 1981). Therefore, the Court finds that much of the communication between Frontier, Beyer, Altshuler, and Texas Brine is not protected by the work product doctrine, absent a specific showing of the legal nature of each withheld communication, and that it was specifically created in anticipation of litigation.

## Conclusion

The Court reaches the conclusions contained herein based upon the business nature of Texas Brine's relationship with Frontier, Beyer, and Altshuler, and finds that Texas

Brine's conclusory, blanket assertions of privilege are insufficient to quash the subpoena duces tecum. The Court further finds that a privilege log is required concerning any communications or materials that do qualify for protection. At a minimum, Texas Brine's privilege log should "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); *see also Wildearth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243, 1266 (D. Colo. 2010) (quoting *Carbajal v. Lincoln Beneficial Life Co.*, 2007 WL 3407345, at *3 (D. Colo. Nov. 13, 2007) (requiring party claiming protection to identify "the author or origin of the document; any documents or materials attached [thereto]; all recipients . . . including addressees and persons or entities receiving copies; the date of origin . . . ; and a description [of] the contents . . . in sufficient detail as to reveal why [the document] is subject to the asserted privilege")).

IT IS THEREFORE ORDERED that Texas Brine's Motion [Doc. No. 1] is GRANTED IN PART and DENIED IN PART. With respect to the eight classes of subpoenaed documents, the Court orders as follows: (1) Frontier is not required to produce these documents as the request is overly broad; (2)-(5) Frontier shall produce these documents subject to privilege screening and production of a log consistent with Fed. R. Civ. P. 26(b)(5)(A); (6) Frontier shall produce these documents; (7) Frontier shall produce these documents subject to privilege screening and production of a log consistent with Fed.

R. Civ. P. 26(b)(5)(A); and (8) Frontier shall produce these documents. All production shall take place within thirty days of the date of this Order.

IT IS SO ORDERED this 7th day of March, 2017.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE